UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ERLINDA MEDRANO, | ) |
|         Plaintiff, | ) No. CV-09-0272-CI |
|         v. | ) ORDER GRANTING DEFENDANT'S |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) MOTION FOR SUMMARY JUDGMENT |
|         Defendant. | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment, noted for hearing without oral argument on September 7, 2010. (Ct. Rec. 12, 17.) Attorney Lora Lee Stover represents Plaintiff Erlinda Medrano ("Plaintiff"); Special Assistant United States Attorney Richard A. Morris represents the Commissioner of Social Security ("Commissioner"). The parties have filed a consent to proceed before a magistrate judge. (Ct. Rec. 7). After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 17) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12).

**JURISDICTION**

On November 14, 2005, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits, alleging disability since September 1, 2001. (Tr. 55, 126-127.) Plaintiff's applications were denied initially and on reconsideration. An administrative hearing was held before Administrative Law Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

1  ("ALJ") Hayward C. Reed on February 7, 2008.  (Tr. 535-589.)  On
2  April 21, 2008, the ALJ issued a decision finding that Plaintiff was
3  not disabled.  (Tr. 10-19.)  On July 23, 2009, the Appeals Council
4  denied Plaintiff's request for review.  (Tr. 3-5.)  Therefore, the
5  ALJ's decision became the final decision of the Commissioner, which
6  is appealable to the district court pursuant to 42 U.S.C. § 405(g).
7  Plaintiff filed an action for judicial review pursuant to 42 U.S.C.
8  § 405(g) on September 3, 2009.  (Ct. Rec. 1.)

**STATEMENT OF FACTS**

10     The facts have been presented in the administrative hearing
11  transcript and, therefore, will only be summarized here.  Plaintiff
12  was 41 years old on the date of the ALJ's decision.  Plaintiff
13  completed the eighth grade in school and has past work as a fast
14  food cashier, janitor, food sorter, housekeeper, and meat packer.
15  (Tr. 552, 575-576.)  Plaintiff indicated that she became disabled on
16  September 1, 2001, due to mental illness and knee and back problems.
17  (Tr. 126-127.)

18     Plaintiff testified that it hurts her back and knees to stand
19  or sit for any length of time.  (Tr. 558.)  She stated that she
20  could sit for forty-five minutes before needing to stand and stand
21  for thirty to forty-five minutes before needing to sit.  (Tr. 564.)
22  Plaintiff also complained of carpal tunnel syndrome in both wrists
23  (surgery performed on the left) and pain in her left shoulder due to
24  a recent accident resulting in a broken collar bone.  (Tr. 558-561.)

25     At the administrative hearing, Plaintiff admitted to using
26  cocaine in December of 2005, methamphetamine in September of 2006,
27  and marijuana about two months prior to the February 2008 hearing.
28  (Tr. 571-572.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if her impairments are of such severity that Plaintiff is not only unable to do her previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments

acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work she has performed in the past. If Plaintiff is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of her residual functional capacity and her age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold

the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since November 14, 2005, the application date. (Tr. 12.) At step two, the ALJ determined that Plaintiff had the following severe impairments: bilateral knee pain, low back pain, somatoform disorder, and personality disorder. (Tr. 12-13.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listings impairments. (Tr. 13-14.)

After considering the record, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light exertion work with certain restrictions. (Tr. 14.) The ALJ determined that Plaintiff could only occasionally climb, stoop, kneel, crouch, and crawl, and only sit for 30 minutes at a time and stand for one hour at a time. (Tr. 14.) The ALJ also indicated that Plaintiff was moderately limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 14-15.)

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 17.) However, based on the testimony of the vocational expert and considering Plaintiff's age,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

educational background, work experience and RFC, the ALJ concluded that Plaintiff could perform work that existed in significant numbers in the national economy. (Tr. 18.) Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 18-19.)

**ISSUES**

Plaintiff contends that the ALJ's determination is not supported by substantial evidence. Specifically, she argues that:

1. The ALJ's assessment of Plaintiff's mental limitations is not in conformity with the evidence of record;

2. The ALJ's finding that Plaintiff is capable of a restricted range of light duty work is not proper based upon the evidence of record;

3. The ALJ's opinion that Plaintiff is not credible is not supported by the record; and

4. The ALJ's RFC assessment is not in conformity with the evidence of record.

**DISCUSSION**

**I.   Plaintiff's Credibility**

Plaintiff argues that the ALJ erred in assessing her credibility and by not giving her complaints of pain greater weight. (Ct. Rec. 13 at 13-14).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once Plaintiff produces medical evidence of an underlying

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

impairment, the ALJ may not discredit Plaintiff's testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ may consider at least the following factors when weighing Plaintiff's credibility: Plaintiff's reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, Plaintiff's daily activities, Plaintiff's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court must not engage in second-guessing. *Id.* at 959.

    The ALJ considered the evidence of record and concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (Tr. 15.) The ALJ discussed the evidence of record and determined that Plaintiff's testimony was not fully credible. (Tr. 15-16.)

    As indicated by the ALJ, the record includes statements by doctors suggesting Plaintiff was engaged in malingering,

exaggeration and misrepresentation. (Tr. 15-16.) In March 2007, Kathy Jamieson-Turner, M.S., examined Plaintiff under the supervision of Frank Rosekrans, Ph.D. (Tr. 277-285.) The Personality Assessment Inventory ("PAI") and the Minnesota Multiphasic Personality Inventory ("MMPI") suggested exaggeration and malingering. (Tr. 280, 285.) In March 2008, Dr. Rosekrans noted the possibility that Plaintiff exaggerated her symptoms on exam. (Tr. 492.) Although he did not diagnose malingering, Dr. Rosekrans indicated that the "inconsistencies in her history, the drug-seeking behaviors, and over-reporting of symptoms in this and previous evaluations suggests some degree of malingering." (Tr. 494.)

The ALJ also noted that there are many inconsistencies between Plaintiff's statements and the objective medical evidence. (Tr. 15.) For example, Plaintiff testified that she could only sit for 45 minutes at a time (Tr. 564), but Dr. Rosekrans observed that she sat for 5½ hours during his exam, without medication and with no apparent signs of pain (Tr. 488). (Tr. 16.) Inconsistencies in a disability claimant's testimony supports a decision by the ALJ that a claimant lacks credibility. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986).

The ALJ further noted that Plaintiff has shown drug-seeking behavior which involved an element of deception in order to obtain medication. (Tr. 16.) Community Health Association records indicate drug-seeking and addictive behavior. (Tr. 12, 350-351, 355-356.) In Dr. Rosekrans' March 2008 report, he indicated that "it is clear that she engages in drug-seeking behavior." (Tr. 495.) An ALJ may properly consider evidence of a claimant's drug use and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

drug-seeking behavior in assessing credibility. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

The ALJ additionally noted that Plaintiff did not appear to be particularly motivated or interested in working, which called into question whether it is her impairments or her lack of desire to work that caused her to seek disability. (Tr. 16.) The Ninth Circuit has recognized that the ALJ may properly consider the issue of motivation in assessing credibility. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

Finally, the ALJ indicated that Plaintiff has received mental health treatment on a very infrequent basis. The ALJ stated that if Plaintiff's mental health problems were not severe enough to motivate her to seek treatment, it is difficult to accept her assertion that they are disabling. (Tr. 16.) The Ninth Circuit, however, has determined that the fact that a claimant does not "seek treatment for a mental disorder until late in the day" is not a proper basis on which to find a claimant not credible regarding that condition. *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996) (noting that those with depression often do not recognize their condition reflects potentially serious mental illness). It was thus not proper for the ALJ to consider Plaintiff's limited mental health treatment as evidence of a lack of a credibility. Nevertheless, an error in the credibility analysis is harmless error when substantial evidence supports the ALJ's ultimate conclusion that Plaintiff's testimony was not credible. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-1163 (9th Cir. 2008); *Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec. of Health and Human*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

*Services,* 734 F.2d 1378, 1380 (9th Cir. 1984). In this case, the ALJ cited several valid reasons supported by substantial evidence in the record for finding Plaintiff not fully credible. *See supra*. As a result, this erroneous reason offered by the ALJ constitutes harmless error.

After reviewing the record, the undersigned finds that the reasons provided by the ALJ for finding Plaintiff not fully credible, as outlined above, are clear and convincing and supported by substantial evidence. Accordingly, the ALJ did not err by concluding that Plaintiff's testimony was not entirely credible in this case.

**II.  RFC Determination**

Plaintiff asserts that the ALJ failed to properly assess her RFC. (Ct. Rec. 13 at 14-16.) RFC is defined as the most one can still do despite the individual's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making a RFC determination, the ALJ considers Plaintiff's symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence of record. The ALJ also considers the opinions of acceptable medical sources which reflect the judgment about the nature and severity of the impairments and resulting limitations.

The ALJ found that Plaintiff had the RFC to perform light exertion level work with certain restrictions. (Tr. 14.) The ALJ determined that Plaintiff could only occasionally climb, stoop, kneel, crouch, and crawl, and only sit for 30 minutes at a time and stand for one hour at a time. (Tr. 14.) The ALJ also indicated that Plaintiff was moderately limited in her ability to get along

with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 14-15.)

### A. Mental Limitations

With respect to Plaintiff's mental ability, Plaintiff argues that limitations assessed by Drs. Mabee and Rosekrans reflect far greater restrictions than a moderate limitation on her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Ct. Rec. 13 at 11-13, 15-16).

On January 15, 2006, John F. McRae, Ph.D., reviewed the records and completed a assessment of Plaintiff's mental abilities. (Tr. 142-159.) Dr. McRae noted only mild restriction of activities of daily living, mild difficulties in maintaining social functioning and mild difficulties maintaining concentration, persistence or pace. (Tr. 152.) Dr. McRae found Plaintiff "not significantly limited" in all areas other than a finding that Plaintiff was moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 156-157.)

On July 28, 2006, Dr. McRae examined Plaintiff. Dr. McRae diagnosed Plaintiff with post traumatic stress disorder; major depressive disorder, recurrent with questionable psychotic features; substance dependence in sustained full remission; histrionic personality traits; rule out learning disability, spelling; and rule out borderline intellectual functioning. (Tr. 257.) He found that Plaintiff's exaggeration of her levels of symptoms confounded his attempt to get an accurate view of how she functions on a day-to-day basis. (Tr. 258.) However, Dr. McRae concluded that she would be able to sustain simple work tasks primarily away from other people.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

(Tr. 258.)

On March 5, 2007, Ms. Jamieson-Turner examined Plaintiff under the supervision of Dr. Rosekrans. (Tr. 277-285.) As noted above, the PAI and MMPI suggested exaggeration and malingering. (Tr. 280, 285.) Plaintiff was diagnosed with undifferentiated somatization disorder and personality disorder, NOS, and given a global assessment of functioning score of 60.[1]

Medical expert Walter Scott Mabee, Ph.D., testified at the administrative hearing held on February 7, 2008. (Tr. 540-550.) Dr. Mabee stated that Plaintiff's mental impairments did not meet or equal a Listings impairment. Dr. Mabee testified that, without substance abuse, Plaintiff has mild restrictions in activities of daily living and mild to moderate difficulties in social functioning, but there was insufficient evidence to assess Plaintiff's difficulties with concentration, persistence or pace. Dr. Mabee indicated that additional testing for cognitive abilities would be helpful. The ALJ later ordered a consultative exam.

On March 4, 2008, Dr. Rosekrans examined Plaintiff and noted that inconsistencies in her history, drug-seeking behaviors, and over-reporting of symptoms suggested some degree of malingering. (Tr. 494.) He diagnosed undifferentiated somatoform disorder; other substance-related disorder, NOS: prescription pain medication seeking and abuse; personality disorders, NOS (mixed personality

---

[1] A GAF of 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

disorder with borderline, antisocial, schizotypal, obsessive-compulsive, and avoidant features); and borderline intellectual functioning. (Tr. 495.) He also gave Plaintiff a GAF score of 45.[2] However, as indicated by the ALJ (Tr. 16), the narrative portion of Dr. Rosekrans' report does not reflect "serious symptoms," and Dr. Rosekrans' checkbox form indicated, at most, only mild limitations.[3] (Tr. 487-502.) The ALJ properly discounted this portion of Dr. Rosekrans' medical report, the GAF score of 45, as it was inconsistent with Dr. Rosekrans's overall assessment. (Tr. 16.)

Other than the properly discounted GAF score of 45, the mental limitations assessed by the ALJ in this case are in accord with the reports of Drs. Mabee and Rosekrans. Moreover, the opinions of these medical professionals are consistent with the findings of Dr. McRae on January 15, 2006, and July 28, 2006.

While Plaintiff argues that the ALJ erred by failing to acknowledge Dr. Mabee's testimony regarding the presence of a mood disorder under Listing 12.04 (Ct. Rec. 13 at 13), the ALJ properly analyzed the record, found severe mental impairments and analyzed

---

[2] A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

[3] Dr. Rosekrans completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) and found either no limitations or mild limitations (with mild defined as a slight limitation, but the individual can generally function well) in all categories of Plaintiff's mental functioning. (Tr. 500-501.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

the severity of Plaintiff's mental limitations. (AR 14.) The ALJ accounted for Plaintiff's supported limitations in his RFC determination. The ALJ's evaluation of the evidence and the functional limitations imposed by the combination of Plaintiff's impairments are more important than descriptive labels. 20 C.F.R. § 416.923. At most, the ALJ's omission of identification of a "mood disorder" as a separate severe impairment is harmless error. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the ALJ's consideration of limitations at step 4 rendered harmless any error in failing to include the impairment at step 2); *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (where a mistake is nonprejudicial or irrelevant to the ALJ's ultimate disability conclusion it is harmless error).

**B.   Physical Limitations**

Plaintiff also argues the ALJ's finding that Plaintiff is capable of a restricted range of light duty work is contrary to the opinion of Barbara Tritt, PA-C, and evidence submitted to the Appeals Council following the ALJ's decision. (Ct. Rec. 13 at 11.)

**1.   Barbara Tritt, PA-C**

Plaintiff asserts the ALJ failed to give proper weight to the opinion of Ms. Tritt, PA-C. (Ct. Rec. 13 at 11).

In August 2005, Ms. Tritt completed a physical evaluation form which indicated that Plaintiff was limited to sedentary work. (Tr. 217-220.) Ms. Tritt, a certified physician assist, is not a physician. Therefore, her testimony and opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security regulations. 20 C.F.R. §§ 404.1513, 416.913. Only acceptable medical sources can give medical opinions.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

20 C.F.R. § 416.927(a)(2).

No other medical sources during the relevant time period have opined that Plaintiff was limited to sedentary work, except for Jeremy Larson, M.D. (Tr. 209-215.) However, Dr. Larson's March 2005 report indicates that Plaintiff could lift up to 30 pounds. (Tr. 214.) As noted by the ALJ, being able to lift 30 pounds is consistent with light or medium exertion level work, not sedentary work. (Tr. 16.) The ALJ's conclusion that Plaintiff is capable of light duty work is also supported by the June 13, 2006, opinion of Norman Staley, M.D. (Tr. 17, 134-141.) This non-examining physician found that Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. (Tr. 135.) In any event, the jobs identified by the vocational expert in this matter, and cited by the ALJ in his step five determination, are sedentary level positions. (Tr. 18, 582-583.)

**2.   Lylanya Cox, M.D.**

After the ALJ's April 21, 2008 decision was filed, Plaintiff submitted records from Dr. Cox for the period February 2008 through May 2008. (Tr. 507-526.) Plaintiff also submitted a physical evaluation form completed by Dr. Cox on January 15, 2009. (Tr. 531-534.) On this form, Dr. Cox opines that Plaintiff is limited to sedentary level work. The Appeals Council considered this evidence and determined that it did not provide a basis for changing the ALJ's decision.

This court has jurisdiction to remand matters on appeal for consideration of newly discovered evidence. *Goerg v. Schweiker*, 643 F.2d 582, 584 (9th Cir. 1981); 42 U.S.C. § 405(g). Section 405(g) expressly provides for remand where new evidence is "material" and

there is "good cause" for the failure to incorporate the evidence in a prior proceeding. *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). To be material, the new evidence must bear directly and substantially on the matter in issue. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). Also, there must be a reasonable possibility that the new evidence would have changed the outcome if it had been before the Secretary. *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380-81 (9th Cir. 1984).

First, the new evidence is not material. Dr. Cox's physical evaluation form was completed over eight months after the ALJ's decision. It is therefore immaterial because it does not address claimant's medical status during the relevant period at issue in this action. Plaintiff has also not shown a reasonable possibility of changing the outcome of the ALJ's determination with the new evidence. As noted above, all three jobs identified by the vocational expert in this matter, and cited by the ALJ as jobs existing in significant numbers that Plaintiff can perform, are sedentary level positions. (Tr. 18, 582-583.)

Moreover, Plaintiff has not shown good cause for her failure to incorporate the records prior to the ALJ's decision. Plaintiff offers no reason why she had not solicited this information earlier. *See, e.g., Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1473 (9th Cir. 1984) (seeking out a new success with the agency does not establish "good cause"). Since Plaintiff fails to meet the materiality and "good cause" requirements, the court is unable to consider the newly submitted evidence. (Tr. 507-534.)

It is the responsibility of the ALJ to resolve conflicts in medical testimony and resolve ambiguities. *Saelee v. Chater*, 94

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

F.3d 520, 522 (9th Cir. 1996). The court thus has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). Contrary to Plaintiff's argument, the record does not support a more restrictive RFC determination than as assessed by the ALJ in this matter.

**CONCLUSION**

As determined above, the ALJ's RFC finding was proper in this case. Accordingly, the ALJ properly concluded that Plaintiff was capable of light exertion level work but could only occasionally climb, stoop, kneel, crouch, and crawl, only sit for 30 minutes at a time and stand for one hour at a time, and was moderately limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 14-15.)

Vocational expert Dr. Joseph A. Moisan testified that based on a hypothetical which included the limitations assessed by the ALJ in this case, the individual would be capable of performing work as an order caller, a ticket seller and film touch-up inspector, jobs that exist in significant numbers in the national economy. (Tr. 582-583.) All three jobs identified by the vocational expert are sedentary exertion level positions. *Id*. At step five of the sequential evaluation process, the ALJ found that, based on Plaintiff's age, education, work experience, RFC and the vocational expert's testimony, Plaintiff was capable of performing other work.

This court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

a whole to support the decision.  Having reviewed the record and the ALJ's conclusions, the court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff is thus not disabled within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 12**) is **DENIED**.

2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 17**) is **GRANTED**.

3.   The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

DATED October 18, 2010.

               S/ CYNTHIA IMBROGNO
          UNITED STATES MAGISTRATE JUDGE